# STATE OF MICHIGAN

# COURT OF APPEALS

In re S. M. JAMES, Minor.

UNPUBLISHED
August 20, 2015

No. 323265
Kent Circuit Court
Family Division
LC No. 14-051606-NA

Before: OWENS, P.J., and SAAD and GADOLA, JJ.

PER CURIAM.

Respondent-father appeals as of right from an order terminating his parental rights to his minor daughter, SM, at the initial dispositional hearing pursuant to MCL 712A.19b(3)(d) and (f). Because we conclude that the trial court did not clearly err in finding that sufficient evidence supported termination under MCL 712A.19b(3)(f), and that termination was in the child's best interests, we affirm.

## I. BACKGROUND

Shortly after SM's birth in August 2011, her biological mother voluntarily placed her in a limited guardianship with Melissa DeLoach. When DeLoach became unable to care for SM, Matthew and Krista McCully were granted an emergency temporary guardianship over SM in May 2012, and were officially appointed as successor guardians later that year. As part of the guardianship placement plan, the probate court ordered respondent-father to regularly visit SM, to participate in counseling services, and to financially contribute to SM's care.

In May 2014, the McCullys filed a petition requesting the trial court to assume jurisdiction over SM and to terminate respondent-father's parental rights to the child.[1] The petition alleged that respondent-father had failed, without good cause, to comply with the guardianship placement plan's requirements that he visit his daughter, participate in counseling, and provide financial support for SM. At a termination hearing on July 10, 2014, Matthew McCully testified that during the two and a half years SM was in the McCullys' care,

---

[1] The petition also requested that the trial court terminate mother's parental rights to SM, but mother voluntarily released her parental rights and consented to an adoption before the July 2014 termination hearing.

respondent-father never called or visited, did not provide any assistance for SM's food or clothing, and only sent one birthday card and one Christmas card.

Respondent-father testified on his own behalf at the hearing. He explained that shortly after SM's birth in August 2011, he was incarcerated. Following a several month release, he was incarcerated again in September 2013, and remained incarcerated at the time of the termination hearing. In total, respondent-father estimated that he had been incarcerated for all but five months of SM's life. Respondent-father testified that when he was not in prison, he held a job making $17.25 an hour, but he did not assist the McCullys with supporting SM in any way. Respondent-father acknowledged that he did not visit or call SM during the previous two years, and only attempted to contact her through letters. Respondent-father indicated that he did not object to the McCullys adopting SM, but he wanted the right to visit her and to get photographs.

Following proofs and closing arguments, the trial court found that clear and convincing evidence supported termination under MCL 712A.19b(3)(d) and (f), and found that terminating respondent-father's parental rights was in SM's best interests.

## II. STANDARD OF REVIEW

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review for clear error a trial court's determination that a statutory ground for termination was established by clear and convincing evidence. *Id.*; MCR 3.977(K). Likewise, we review a trial court's finding that termination was in a child's best interests for clear error. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). A trial court's findings are clearly erroneous "if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

## III. STATUTORY GROUNDS

The trial court found that clear and convincing evidence supported terminating respondent-father's parental rights under MCL 712A.19b(3)(d) and (f). MCL 712A.19b(3)(f) provides the following:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (f) The child has a guardian under the estates and protected individuals code, 1998 PA 386, MCL 700.1101 to 700.8206, and both of the following have occurred:
>
> (*i*) The parent, having the ability to support or assist in supporting the minor, has failed or neglected, without good cause, to provide regular and substantial support for the minor for a period of 2 years or more before the filing

-2-

of the petition or, if a support order has been entered, has failed to substantially comply with the order for a period of 2 years or more before the filing of the petition.

(*ii*) The parent, having the ability to visit, contact, or communicate with the minor, has regularly and substantially failed or neglected, without good cause, to do so for a period of 2 years or more before the filing of the petition.

Thus, termination under § 19b(3)(f) is warranted if clear and convincing evidence shows that the child has a guardian and the parent, having the ability to do so, fails, without good cause, to *both* (*i*) "provide regular and substantial support for the minor" and (*ii*) regularly "visit, contact, or communicate with the minor" for a period of two or more years before the filing of the petition.

In this case, the evidence clearly established that there was a guardianship in place for SM pursuant to MCL 700.5205, and that respondent-father, by his own testimony, failed to provide regular and substantial support for SM and failed to regularly visit, contact, or communicate with her over a period of two or more years before the filing of the termination petition. Respondent-father argues, however, that termination under § 19b(3)(f) was nonetheless inappropriate because there was not clear and convincing evidence that he had the ability to support and maintain contact with SM due to his frequent incarcerations. We disagree.

A parent's incarceration, standing alone, does not relieve the parent of the statutory responsibility to maintain contact with and provide support for a child when the "incarcerated parent may still retain the ability to comply with the support and contact requirements of the statute." *In re Caldwell*, 228 Mich App 116, 121; 576 NW2d 724 (1998). The record makes clear that despite his incarceration, respondent-father had the ability to maintain contact with SM. In fact, respondent-father sent two cards to SM while he was in prison, thus proving his ability to maintain contact. Clearly, however, merely sending two cards over a two and a half year period does not amount to regular and substantial contact. MCL 712A.19b(3)(f)(*ii*).

There was also sufficient evidence to support the trial court's conclusion that respondent-father had the ability to support or assist with the support of SM. Evidence presented at the termination hearing revealed that between SM's birth in August 2011 and the termination hearing in July 2014, respondent-father was released from prison for periods totaling five months, during which he maintained a job making $17.25 an hour. Yet, respondent-father never attempted to send money or gifts to support SM during the two and a half years she was in the McCullys' care. Further, nothing in the record indicates that during his terms of incarceration, respondent-father was unable to earn income or provide some assistance to SM. Given these facts, we are satisfied that the trial court did not clearly err in finding that clear and convincing evidence supported terminating respondent-father's parental rights under § 19b(3)(f). In light of our conclusion, we need not address the additional statutory ground relied upon by the trial court. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

## IV. BEST INTERESTS

Respondent-father also argues that the trial court clearly erred in finding that termination of his parental rights was in SM's best interests. We disagree. "Once a statutory ground for

termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). In assessing whether termination is in a child's best interests, the trial court should weigh all the evidence available to it and may consider factors including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* at 41-42 (citations omitted). Other considerations include the length of time the child was in care, the likelihood that the child could be returned to the parent in the foreseeable future, and the parent's visitation history. *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012); *In re BZ*, 264 Mich App at 301.

At the time of the July 2014 termination hearing, SM had been under the care of a relative guardian for almost three years, and was in need of permanency, stability, and finality. Respondent-father had not had any physical contact with SM in over two and a half years, and the only contact he *did* have with her was through two cards. Moreover, at the time of termination, respondent-father was incarcerated with no certainty as to when he would be released. Finally, it is worth noting that respondent-father agreed that SM's continued placement with the McCullys was in her best interests, and even indicated that he would not object to the McCullys adopting SM. Under these circumstances, the trial court did not clearly err in finding that termination was in SM's best interests.

Affirmed.

/s/ Donald S. Owens
/s/ Henry William Saad
/s/ Michael F. Gadola

-4-